EXHIBIT F

*Dantes*

| CIVIL COURT OF THE CITY OF NEW YORK | Index No. L&T: 78068-18 |
|---|---|
| COUNTY OF QUEENS | Page 1 of 4 |
| Date 2/7/19        Part A. | Hon. LAV |

MTGLQ Investors, L.P.,

Petitioners

BARBARA A. WHITNEY
et al.

Respondents

**STIPULATION OF SETTLEMENT**
*The parties understand that each party
has the right to trial, the right to see a
Judge at any time and the right not to
enter into a stipulation of settlement.
However, after review of all the issues
the parties agree that they do not want
to go to trial and instead agree to the
following stipulation in settlement of
the issues in this matter*

| Party (please print) | Added/Amended Or Deleted | Appearance | No Appearance | No Answer |
|---|---|---|---|---|
| Petitioner MTGLQ Investors, L.P. | | ✓ | | |
| ~~BARBARA A. WHITNEY~~ | | ✓ | | |
| Respondent 1 BRIAN C. HARDY | | ✓ | | |
| JENNIFER BOLGEHN | | ✓ | | |
| MELISSA BOLGEHN | | ✓ | | |
| Respondent 2 RALPH BOLGEHN | | ✓ | | |
| SUSAN BOLGEHN-A/K/A SUSAN ~~ZELLER~~ | | | | |
| JOHN DOE | | | | |
| Respondent 3 JANE DOE | | | | deleted ✗ |

✗ JOHN DOE + JANE DOE ARE DELETED based upon Respondent's counsel + Representation that no other adult occupants reside in the premises.

Final judgment of possession in favor of petitioner. Warrant to issue forthwith execution stayed to 4/30/19 for respondent to vacate leave premises broom clean, free from intentional damage, debris and occupants and surrender keys to landlord who shall provide a dated receipt. Anything remaining in the premises shall be deemed abandoned and discarded without liability. In consideration of a final date and the above the petitioner waives any claims to use and occupancy. Upon default the warrant shall execute ~~PETITIONER MAY~~ + PRESERVE DEFENDANT upon service of a marshals notice and petitioner may request all money waived! No one is in the military or dependent upon anyone in the military. Respondents also states none of the occupants are in the military or dependent upon the military. Respondents consent to the jurisdiction of the court and waive defenses and admit to the presentation of the deed. Time is of the Essence. No default + shall be deemed diminimus, ALL PAPERS AMENDED to ADD A/K/A SUSAN ZELLER. ZELLER.

Respondents' Attorney

At an IAS Part _A_ of the ~~Civil~~ Housing Court of the State of New York, held in and for the county of Queens, at the courthouse located at 89-17 Sutphin Blvd, Jamaica, NY 11435, on the 26th day of December, 2019.

**FILED**
QUEENS COUNTY

DEC 2 6 2019

CIVIL COURT
HOUSING PART

PRESENT: Hon. _Guthrie_

Justice _J.H.C._

CIVIL COURT OF THE CITY OF NEW YORK

COUNTY OF QUEENS

-----------------------------------------------------------------X

MTGLQ INVESTORS, L.P.

Index No. L/T 78068/17

Marshall Docket No. 23173

**EMERGENCY ORDER**

**TO SHOW CAUSE**

Petitioner

_Landlord_

Hon. _Guthrie_

-against-

RALPH BOLGEHN

78-13 79th St   #Rooms: ALL

RIDGEWOOD, NY 11385

A/K/A 78-13 79th St, Glendale, NY 11385

Respondent

_Tenant_

_"John and Jane Doe"_

Respondent

_Undertenant_

-----------------------------------------------------------------X

UPON READING AND FILLING the affidavit of the Respondent RALPH BOLGEHN dated December 23 2019, and the affirmation of Anadel Canale Esq., dated December 26, 2019, and all exhibits annexed hereto.

LET the Petitioner or their attorney show cause before this Court at Room: _A_, Part: _401_, to be held at the Queens County ~~Supreme~~ Civil Courthouse located at 89-17 Sutphin Blvd, Jamaica, NY 11435, on the _2nd_ day of _January, ~~2019~~, 2020_ at _10:30 AM_, in the forenoon of that day, or as soon thereafter as counsel may be hard, why an order should not be made:

a) Staying the Warrant of Eviction until January 31st, 2020;

b) Staying execution of the instant judgement till January 31, 2020;

c) Granting any further relief this Court deems appropriate.

**ORDERED** that the Pending the hearing ~~and determination~~ on this order to show cause, that all proceedings on the part of the Petitioner to evict the respondents at Subject Property be stayed; _including all proceedings on the part of marshal Guido or any other NYC personal or overnight mail marshal._

**SUFFICIENT CAUSE** therefore appearing, let ~~facsimile and certified mail~~ service of a confirmed copy of this Order with exhibits annexed thereto be served upon _Petitioners_ ~~Plaintiff~~ attorney on or before the _27th_ day of _December_ 2019 be deemed good and sufficient service.

**ENTER:**

_Service on marshal by facsimile on or before 12/27/19._

_J.S.C._ J.H.C.

SO ORDERED - HON. CLINTON J. GUTHRIE

Queens, NY 12/26/19

CIVIL COURT OF THE CITY OF NEW YORK

COUNTY OF QUEENS

------------------------------------------------------------------X

MTGLQ INVESTORS, L.P.

Index No. L/T 78068/17

Marshall Docket No. 23173

**AFFIRMATION IN**

**EMERGENCY**

Petitioner,

*Landlord*

-against-

RALPH BOLGEHN

78-13 79th St   #Rooms: ALL

RIDGEWOOD, NY 11385

A/K/A 78-13 79th St, Glendale, NY 11385

Respondent

*Tenant*

*"John and Jane Doe"*

Respondent

*Undertenant*

------------------------------------------------------------------X

Anadel Canale Esq., an attorney admitted to practice in the Courts of the State of New York, affirms under penalty of perjury pursuant to CPLR § 2106 as follows:

1.      I am the attorney for the Respondent RALPH BOLGEHN in this action, and as such am fully familiar with the facts of this case. I make this Affirmation in support of the application for the review and approval of Respondents Order to Show Cause on an emergency basis.

2. Petitioner's counsel was provided notice of the within Order to Show Cause. (Exhibit "A").

3. The nature of the emergency is as follows:

    a. The Respondent has found a property to move into effective January 31, 2020 (Exhibit "B");

    b. Respondent wife suffers from numerous medical conditions and would be detrimentally effected if she was forced to leave said property prior to January 31, 2020. (Exhibit "C").

    c. The Respondents reside at said property with their two daughters and several pets and have nowhere to go until January 31, 2020.

    d. Petitioner will not be detrimentally effected if Respondents remain in said property until January 31, 2020.

    e. Respondent offered to rent the within property from Petitioner but Petitioner declined said offer.

    f. Respondent's family offered to purchase property from Petition but Petitioner declined said offer.

    g. The Respondent is subject to an eviction on Friday, December 27, 2020.

4. The undersign is requesting a stay of the Warrant of Eviction until January 31, 2020.

Dated: December 26, 2019

Anadel Canale Esq.
*Attorney for the Respondent*
Anadel Canale P.C.
1805 Fifth Ave Suite 8
Bayshore, NY 11706
631-414-7040

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------X
MTGLQ INVESTORS, L.P.

                                                  Index No. L/T 78068/17

                                                  Marshall Docket No. 23173

                                                  **AFFIRMATION IN**

                                Petitioner,        **SUPPORT**

                                *Landlord*

                 -against-

RALPH BOLGEHN

78-13 79th St #Rooms: ALL

RIDGEWOOD, NY 11385

A/K/A 78-13 79th St, Glendale, NY 11385

                                  Respondent

                                  *Tenant*

       *"John and Jane Doe"*

                                  Respondent

                                  *Undertenant*

-----------------------------------------------------------------X

      Anadel Canale Esq., an attorney admitted to practice in the Courts of the State of New York, hereby affirms the following to be true, under the penalties of perjury:

1.  I am the attorney for the Respondent Ralph Bolgehn (hereinafter "Respondent" or "Respondent Bolgehn") in this action, and as such, am fully familiar with the facts of this case.

2.  I make this Affirmation in support of Respondent's instant order to show cause.

26. If this Court grants a stay in favor of Respondent's, virtually no prejudice to Petitioner results. The Petitioner still retains the right to make its claim against Respondent's or come to some sort of settlement agreement. Whereas if this Court denies the injunction, as stated above, the Respondent will be leaved without a home.

**WHEREFORE, it** is respectfully requested that the Respondent be granted the following relief:

a. Staying the Warrant of Execution until January 31, 2020;

b. Allowing the respondent to stay in the said premises until January 31st, 2020.

c. and together with such and other relief as this court seem deem and just proper.

Dated: December 26, 2019

Anadel Canale Esq.
*Attorney for the Respondent*
Anadel Canale P.C.
1805 Fifth Ave Suite 8
Bayshore, NY 11706
631-414-7040

## ATTORNEY CERTIFICATION

I, **Anadel Canale Esq.,** hereby certify, under penalty of perjury, and as an officer of the Court, that to the best of my knowledge, information and belief, formed after an inquiry reasonably under the circumstances, the presentation of the paper or the contentions herein are not frivolous as defined in 22 NYCRR Section 130-1.1(c).

Dated: December 26, 2019

Anadel Canale Esq.

(1889); *see Hudson City Sav. Bankv. Cohen,* 120 A.D.3d at 1305, 993 N.Y.S.2d 66 (2dDep't2014). Moreover, "[a] foreclosure action is equitable in nature and triggers the equitable powers of the court." *Deutsche Bank Natl. Trust Co. v. Ludden,* 91 A.D.3d 701, 701, 936 N.Y.S.2d 561 (2d Dep't 2012); *see Notey v. Darien Constr. Corp.,* 41 N.Y.2d 1055, 1055-1056, 396 N.Y.S.2d 169,364 N.E.2d 833 (1977); *US BankN.A. v. Williams,* 121 A.D.3d 1098; 1101-1102, 995 N.Y.S.2d 172 (2d Dep't 2014); *Norwest Bank Minn., NA v. E.M V. Realty Corp.,* 94 A.D.3d 835,836,943 N.Y.S.2d 113 (2d Dep't 2012); *Mortgage Elec. Registration Sys., Inc. v. Horkan,* 68 A.D.3d 948, 890 N.Y.S.2d 326 (2d Dep't 2009). "Once equity is invoked, the court's power is as broad as equity and justice require" *Norstar Bank* v. *Morabito,* 201 A.D.2d 545,546, 607 N.Y.S.2d 426; *see Mortgage Elec. Registration Sys., Inc. v. Horkan,* 68 A.D.3d at 948,890 N.Y.S.2d at 326. Thus, a court may rely on "its inherent authorize to vacate [a judgment] in the interest of substantial justice, rather than its statutory authority under CPLR 5015(a)," as the "statutory grounds are subsumed by the court's broader inherent authority." *Matter of Adelson,* 84 A.D.3d 952,953, 921 N.Y.S.2d 884 (2d Dep't 2011); *US. Bank Nat. Ass'n* v *Losner,* 145 AD3d 935, 937-38 (2d Dep't 2016).

22. Furthermore, the Court has a long-established policy favoring the resolution of cases on their merits Tugendhaft v Country Estates Assoc., 490 N.Y.S.2d 991 (2nd Dept. 1985); Saleh v Paratore, 474 N.Y.S.2d 85 (2d Dep't 1984).

### *RESPONDENT IS ENTITLED TO A STAY OF EXECUTION OF JUDGEMENT*

23. To obtain such an injunction, a movant must establish: **(1)** a likelihood of ultimate success on the merits, (2) irreparable injury if the provisional remedy is not granted; and (3) a balancing of the equities in the plaintiff's favor. *City of New York v. Love Shack,* 286 A.D.2d 240,242 (1st Dep't 2001).

24. As set forth above, Respondent has a meritorious defense in this action,

25. Respondent will clearly suffer irreparable injury if denied injunctive relief.

## BACKGROUND

### A. *Ownership and Mortgage*

3. On or about July 24th, 1995, Respondent Bolgehn purchased the premises known as 78-13 79th St, Ridgewood, NY 11385 Block 3828 Lot 24. (hereinafter "Subject Premises"). (See Exhibit A)

4. On or about July 25th, 2019, Respondent allegedly took out a mortgage. (Exhibit B)

### B. *The Instant Foreclosure*

5. A Judgement of Foreclosure and Sale entered on April 18, 2017 in a foreclosure action filled in Queens Supreme Court.

6. The property was sold July 7th, 2017.

7. The Respondent learned that the property was in fact sold when he received the within referee.

## RESPONDENT HAS A REASONABLE EXCUSE

8. Respondent wife is very ill which makes it harder for the respondent and his family to move out of a house they have vested 22 years.

9. Respondent and his wife are elderly.

10. Respondent's counsel has contacted MTGLQ Investors LP numerous occasions to try to work out an agreement for respondent to either rent or purchase.

19. Petition MTGLQ Investors LP has denied the request.

20. The Respondent family needs until January 31st, 2020 to be able to move their belongings.

## RESPONDENTS MOTION SHOULD BE GRANTED IN THE INTEREST OF JUSTICE

21. In addition to the grounds set forth above, a court may vacate its own judgment for sufficient reason and in the interests of substantial justice." *Woodson v. Mendon Leasing Corp.*, 100 N.Y.2d at 68, 760 N.Y.S.2d 727, 790 N.E.2d 1156 (2003), citing *Laddv. Stevenson*, 112 N.Y. 325,332, 19 N.E. 842

## Anadel Canale P.C.
### Attorney At Law
anadelcanale1@yahoo.com
Fax #718-709-7572

| **Long Island Office** (Main Office) | **Queens Office** |
|---|---|
| 1805 5th Avenue | 150-52 14th Avenue |
| Suite 8 | 2nd Floor |
| Bayshore NY 11706 | Whitestone, NY 11357 |
| 631-414-7040 | 718-746-2100 |

December 23rd, 2019

The Margolin & Weinreb Law Group, LLP

165 Eileen Way, Suite 101

Syosset, NY 11791

*Attorney for Petitioner*

Edward F Guida Jr #14

47-26 104th St

Corona, NY 11368

*City Marshall*

### RE: MTGLQ INVESTORS, L.P. vs. RALPH BOLGEHN, et. al,

### CIVIL COURT OF THE CITY OF NEW YORK COUNTY QUEENS – INDEX NO. 78068/17 – MARSHAL'S DOCKET NO. 23173

To Whom It May Concern:

You are hereby notified that this firm will be filling an Emergency Order to Show Cause for the above referenced case. Pursuant to NYCRR 202.7(f) please be advised that this application will be made in Room 209 in Civil Court of the City of New York County of Queens located at 89-17 Sutphin Boulevard, NY 11435 on **Thursday December 26th, 2019 at 9:30 am.** Thank you.

Very Truly Yours,

/s/ *Anadel Canale*

Anadel Canale Esq.

Exhibit "A"

**Pankaj K. Mamtora, M.D.**
114-12 Beach Channel Drive
Rockaway Park, NY 11694.
TEL: 718-318-3580.  License #183635.
Fax: 718-474-6040.

**Patient Name:** Susan Zeller
**Patient ID#:** 19550314   **DOB:** 03/14/1955
**Date:** Monday, October 21, 2019

Patient has history of multiple illnesses including fibromyalgia, hypertension, COPD, diabetes, fatigue, low back pain and she is on multiple medications including multiple daily insulin injections.  Patient has difficulty doing household activities and packing.

Sincerely,

Pankaj K Mamtora, MD

PANKAJ K. MAMTORA, MD
114-12 Beach Channel Drive
Rockaway Park, NY 11694
Tel: 718-318-8580

Exb 3, r "B"

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS

--------------------------------------------------------------------x

MTGLQ INVESTORS, L.P.

                                                    **Affidavit**
                                                    Index No. L/T 78068/17
                          *Petitioner*              Marshall Docket No. 23173
                          *Landlord*

            -against-

RALPH BOLGEHN
78-13 79ᵗʰ St #Rooms ALL
RIDGEWOOD, NY 11385
A/K/A 78-13 79ᵗʰ St, Glendale, NY 11385

                          Respondent
                          *Tenant*

      *"John and Jane Doe"*
                          Respondent
                          *Undertenant*

--------------------------------------------------------------------x

RALPH BOLGEHN  herein submit this Affidavit under penalty of perjury:

1. I am the Respondent in the above entitled action.

2. My family and I have owned the home located at 78-13 79ᵗʰ St., Ridgewood, NY 11385 since 1995.

3. We fell behind on our mortgage because I was unemployed, and my wife was disabled and had medical issues.

4. I retained the law firm of Petroff Amshen LLP to assist me in loss mitigation and foreclosure defense.

5. I expended almost $20,000 for this service.

6. In order to keep my home, I was prepared to do a modification, pay off arrears and/or make payments in a Chapter 13 bankruptcy.

7. In July 2017, I was informed of a foreclosure sale date scheduled for August 7, 2017.

8. I called my attorney daily and was informed they were working on it.

9. When the sale date approached, I was sent an email on July 5th, 2019 that the foreclosure sale date was stopped.

10. I believed at that time the sale date was stopped and that my attorney was proceeding with loss mitigation options.

11. On or about August 18th, 2017, I received a notice that another person filed a deed as owner on my home.

12. I immediately contacted my attorney who informed me that it was an error on my lenders part.

13. I was then advised I should file for bankruptcy.

14. I have been attempting to resolve this matter ever since I was informed of what occurred.

15. No one would answer my questions.

16. In desperation I filed bankruptcy by myself.

17. I later retained attorney Anadel Canale to assist me.

18. She filed a notice of appearance and assisted and appeared with me for the 341 Meeting.

19. I do not believe the current person who claims to own my home is the proper owner.

20. My attorney Anadel Canale tried to work out options with the firm who is dealing the landlord tenant case for either a move out fee or option to buy back the house.

21. The firm is being unresponsive to my attorney requests.

22. I am pleading the court to stay the immediate eviction until January 31st, 2020.

23. My lease starts thereafter.

24. If the court does not grant the stay of the eviction my family and I stand to lose my property and everything I own.

Dated: October 23 2019

RALPH BOLGEHN

Notary Public

Sworn to me this 23 day of
October 2019

Anadel Canale
Notary Public State of New York
No. 02CA6068340
Qualified in Queens County
Commission Expires 12/31/ 22

State of New York

Rev. 13413A4

# LEASE AGREEMENT

This Lease Agreement (this "Agreement") is made this 11 day of December, 2019, by and among PAUL FRAGOSO ("Landlord") and RALPH BOLGEHN, JENNIFER M BOLGEHN, SUSAN ZELLER, MELISSA BOLGEHN, (collectively, "Tenant"). Each Tenant is jointly and severally liable to Landlord for payment of rent and performance in accordance with all other terms of this Agreement. Each Landlord and Tenant may be referred to individually as a "Party" and collectively as the "Parties."

**1. Premises.** The premises leased is a house located at 71-16 68th Street, GLENDALE, NY 11385 (the "Premises"). Parking is not included with the Premises.

**2. Agreement to Lease.** Landlord agrees to lease to Tenant and Tenant agrees to lease from Landlord, according to the terms and conditions set forth herein, the Premises.

**3. Term.** This Agreement will be for a term beginning on February 01, 2020 and continuing month-to-month until either Landlord or Tenant terminates this Agreement by providing the other Party with proper written notice of termination (the "Term").

**4. Rent.** Tenant will pay Landlord a monthly rent of $2,600.00 for the Term. Rent will be payable in advance and due on the 1st day of each month during the Term. The first rent payment is payable to Landlord when Tenant signs this Agreement. Rent will be paid to Landlord at Landlord's address provided herein (or to such other places as directed by Landlord) by mail or in person by one of the following methods: Cash, and will be payable in U.S. Dollars. Tenant further agrees to pay $35.00 for each dishonored bank check.

**5. Additional Rent.** There may be instances under this Agreement where Tenant may be required to pay additional charges to Landlord. All such charges are considered additional rent under this Agreement and will be paid with the next regularly scheduled rent payment. Landlord has the same rights and Tenant has the same obligations with respect to additional rent as they do with rent.

**6. Utilities.** Tenant is responsible for payment of all utility and other services for the Premises.

**7. Security Deposit.** Upon signing this Agreement, Tenant will pay a security deposit in the amount of $1,500.00 to Landlord. The security deposit will be retained by Landlord as security for Tenant's performance of its obligations under this Agreement. The security deposit may not be used or deducted by Tenant as the last month's rent of the Term. Tenant will be entitled to a full refund of the security deposit if Tenant returns possession of the Premises to Landlord in the same condition as accepted, ordinary wear and tear excepted. Within thirty (30) days after the termination of this Agreement, Landlord will return the security deposit to Tenant (minus any amount applied by Landlord in accordance with this section). Any reason for retaining a portion of the security deposit will be explained in writing. The security deposit will not bear interest while held by Landlord in accordance with applicable state laws and/or local ordinances.

**8. Landlord's Failure to Give Possession.** In the event Landlord is unable to give possession of the Premises to Tenant on the start date of the Term, Landlord will not be subject to any liability for such failure, the validity of this Agreement will not be affected, and the Term will not be extended. Tenant will not be liable for rent until Landlord gives possession of the Premises to Tenant.

**9. Holdover Tenancy.** If Landlord accepts a rent payment from Tenant, other than past due rent or additional rent, after the Term expires, both Parties understand that a month-to-month holdover tenancy will be created at the agreed upon monthly rent, unless proper notice has been served as required by applicable laws. If either Tenant or Landlord wishes to end the month-to-month tenancy, such Party must provide at least thirty (30) days' written notice before the desired termination date.

**10. Use of Premises.** The Premises will be occupied only by Tenant and Tenant's immediate family and used only for residential purposes. Tenant will not engage in any objectionable conduct, including behavior which will make the Premises less fit to live in, will cause dangerous, hazardous or unsanitary conditions or will interfere with the rights of others to enjoy their property. Tenant will be liable for any damage occurring to the Premises and any damage to or loss of the contents thereof which is done by Tenant or Tenant's guests or invitees.

**11. Condition of the Premises.** Tenant has examined the Premises, including the appliances and fixtures, and acknowledges that they are in good condition and repair, normal wear excepted, and tear and accepts them in its current condition.

**12. Maintenance and Repairs.** Tenant will maintain the Premises, including the grounds and all appliances and fixtures, in clean, sanitary and good condition and repair. Tenant will not remove Landlord's appliances and fixtures from the Premises for any purpose. If repairs other than general maintenance are required, Tenant will notify Landlord for such repairs. In the event of default by Tenant, Tenant will reimburse Landlord for the cost of any repairs or replacement.

**13. Reasonable Accommodations.** Landlord agrees to comply with all applicable laws providing equal housing opportunities, including making reasonable accommodations for known physical or mental limitations of qualified individuals with a disability, unless undue hardship would result. Tenant is responsible for making Landlord aware of any such required accommodations that are reasonable and will not impose an undue hardship. If Tenant discloses a disability and requests an accommodation, Landlord has the right to have a qualified healthcare provider verify the disability if the disability is not readily apparent, and Landlord has the right to use the qualified healthcare provider verifying the disability as a resource for providing the reasonable accommodation.

**14. Sex Offender Registry.** Pursuant to law, information about specified registered sex offenders is made available to the public. Tenant understands and agrees that Tenant is solely responsible for obtaining any and all information contained in the state or national sex offender registry for the area surrounding the Premises, which can be obtained online or from the local sheriff's department or other appropriate law enforcement officials. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and zip code in which he or she resides.

**15. Compliance.** Tenant agrees to comply with all applicable laws, ordinances, requirements and regulations of any federal, state, county, municipal or other authority.

**16. Mechanics' Lien.** Tenant understands and agrees that Tenant and anyone acting on Tenant's behalf do not have the right to file for mechanic's liens or any other kind of liens on the Premises. Tenant agrees to give actual advance notice to any contractors, subcontractors or suppliers of goods, labor or services that such liens are invalid. Tenant further agrees to take the additional steps necessary to keep the Premises free of any and all liens that may result from construction completed by or for Tenant.

**17. Subordination.** With respect to the Premises, this Agreement is subordinate to any mortgage that now exists, or may be given later by Landlord.

**18. Alterations.** Tenant will not make any alteration, addition or improvement to the Premises without first obtaining Landlord's written consent. Any and all alterations, additions or improvements to the Premises are without payment to Tenant and will become Landlord's property immediately on completion and remain on the Premises, unless Landlord requests or permits removal, in which case Tenant will return that part of the Premises to the same condition as existed prior to the alteration, addition or improvement. Tenant will not change any existing locks or install any additional locks on the Premises without first obtaining Landlord's written consent and without providing Landlord a copy of all keys.

**19. Smoking.** Smoking of any kind is strictly prohibited on any part of the Premises. This prohibition applies to Tenant and any visitors, guests or other occupants on the Premises.

**20. Pets.** Tenant is not allowed to have or keep any pets, even temporarily, on any part of the Premises, except for the following: dogs. The unauthorized presence of any pet will subject Tenant to penalties, damages, deductions and/or termination of this Agreement. Properly trained service animals that provide assistance to individuals with disabilities may be permitted on the Premises with the prior written consent of Landlord, which shall not be unreasonably withheld. Tenant will be responsible for the costs of de-fleaing, deodorizing and/or shampooing all or any portion of the Premises if a pet has been on the Premises at any time during the Term (whether with or without written consent of Landlord).

**21. Fire and Casualty.** If the Premises are damaged by fire or other serious disaster or accident and the Premises becomes uninhabitable as a result, Tenant may immediately vacate the Premises and terminate this Agreement upon notice to Landlord. Tenant will be responsible for any unpaid rent or will receive any prepaid rent up to the day of such fire, disaster or accident. If the Premises are only partially damaged and inhabitable, Landlord may make full repairs and will do so within a prompt and reasonable amount of time. At the discretion of Landlord, the rent may be reduced while the repairs are being made.

**22. Liability.** Landlord is not responsible or liable for any loss, claim, damage or expense as a result of any accident, injury or damage to any person or property occurring anywhere on the Premises, unless resulting from the negligence or willful misconduct of Landlord.

**23. Assignment and Subletting.** Tenant will not assign this Agreement as to any portion or all of the Premises or make or permit any total or partial sublease or other transfer of any portion or all of the Premises.

**24. Insurance Requirements.** Tenant will not do or permit to be done any act or thing that will increase the insurance risk under any policy of insurance covering the Premises. If the premium for such policy of insurance increases due to a breach of Tenant's obligations under this Agreement, Tenant will pay the additional amount of premium as additional rent under this Agreement.

**25. Right of Entry.** Landlord or its agents may enter the Premises at reasonable times to inspect the Premises, to make any alternations, improvements or repairs or to show the Premises to a prospective tenant, buyer or lender. In the event of an emergency, Landlord may enter the Premises at any time.

**26. Surrender.** Tenant will deliver and surrender to Landlord possession of the Premises immediately upon the expiration of the Term or the termination of this Agreement, clean and in as good condition and repair as the Premises was at the commencement of the Term, reasonable wear and tear excepted.

**27. Default.** In the event of any default under this Agreement, Landlord may provide Tenant a notice of default and an opportunity to correct such default. If Tenant fails to correct the default, other than a failure to pay rent or additional rent, Landlord may terminate this Agreement by giving a sixty (60) day written notice. If the default is Tenant's failure to timely pay rent or additional rent as specified in this Agreement, Landlord may terminate this Agreement by giving a sixty (60) day written notice to Tenant. After termination of this Agreement, Tenant remains liable for any rent, additional late, costs, including costs to remedy any defaults, and damages under this Agreement.

**28. Remedies** If this Agreement is terminated due to Tenant's default, Landlord may, in addition to any rights and remedies available under this Agreement and applicable law, use any dispossession, eviction or other similar legal proceeding available in law or equity.

**29. Subordination.** This Agreement and Tenant's right under it shall be subject and subordinate to the lien, operation and effect of each existing or future mortgage, deed of trust, ground lease and/or any other similar instrument of encumbrance covering any or all of the Premises, if any, and each renewal, modification, consolidation, replacement or extension thereof.

**30. Condemnation.** If all or substantially all of the Premises are covered by a condemnation including the exercise of any power of eminent domain by a governmental authority, this Agreement shall terminate on the date possession of the Premises is taken by the condemning authority, and all rent under this Agreement shall be prorated and paid to such date. Landlord is entitled to collect from the condemning authority the entire amount of any award made in any proceeding. Tenant waives any right, title or interest which Tenant may have to any such award and agrees to not make any claim for the Term of this Agreement.

**31. Hazardous Materials.** Tenant shall not keep on the Premises any item of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

**32. Notices.** All notices given under this Agreement must be in writing. A notice is effective upon receipt and shall be delivered in person, sent via certified or registered mail to the following addresses (or to another address that either Party may designate upon reasonable notice to the other Party):

Notices shall be sent to the Tenant at the following address:

**33. Quiet Enjoyment.** If Tenant pays the rent and performs all other obligations under this Agreement, Tenant may peaceably and quietly hold and enjoy the Premises during the Term.

**34. No Waiver.** No Party shall be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing.

**35. Severability.** If any provision of this Agreement is held to be invalid, illegal or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid, legal and enforceable as though the invalid, illegal or unenforceable part had not been included in this Agreement.

**36. Successors and Assigns.** This Agreement will inure to the benefit of and be binding upon the Parties and their permitted successors and assigns.

**37. Governing Law.** The terms of this Agreement and the rights and obligations of the Parties hereto shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflicts of laws provisions.

**38. Amendments.** This Agreement may be amended or modified only by a written agreement signed by the Parties.

**39. Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same document.

**40. Headings.** The section headings herein are for reference purposes only and shall not otherwise affect the meaning, construction or interpretation of any provision in this Agreement.

**41. Entire Agreement.** This Agreement constitutes the entire agreement between the Parties and supersedes and cancels all prior agreements of the Parties, whether written or oral, with respect to the subject matter.

**42. Miscellaneous.** $1500 dollar deposit received on December 11th 2019 Balance due February 1st 2020 of $3700. Move in as of January 31st .

IN WITNESS WHEREOF, the Parties hereto, individually or by their duly authorized representatives, have executed this Agreement as of the Effective Date.

_____
**Landlord** Signature

_____
Paul Fragoso
**Landlord** Full Name

_____
**Tenant** Signature

_____
Ralph Bolgehn
**Tenant** Full Name

_____
**Tenant** Signature

_____
Jennifer M Bolgehn
**Tenant** Full Name

_____
**Tenant** Signature

_____
Susan Zeller
**Tenant** Full Name

_____
**Tenant** Signature

_____
Melissa Bolgehn
**Tenant** Full Name

This page intentionally left blank.